IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | |
| | ) | Cr. No. 04-069T |
| | ) | |
| RENATO M. GARCIA, a/k/a | ) | |
| Renato Da Costa Ponta-Garca | ) | |

**GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT**
**WITH RESPECT TO THE CLAIM OF JENNIFER MITCHELL**

Now comes the United States of America, by and through its attorneys, pursuant to Fed. R. Civ. P. 56, as incorporated by Fed. R. Crim. P. 32.2(c)(1)(B), and moves for summary judgment with respect to the claim of Jennifer Mitchell "to the sum of Twenty-Five thousand ($25,000.00) Dollars from the funds seized from Renato Garcia and/or Renskip Motor Sales" for the reason that there is no genuine issue as to any material fact and the government is entitled to judgment as a matter of law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

Michael P. Iannotti

MICHAEL P. IANNOTTI
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September 2005, I caused a copy of the foregoing **GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE CLAIM OF JENNIFER MITCHELL** and supporting memorandum of law and Statement of Undisputed Facts to be forwarded, by regular mail, to:

Susan T. Perkins, Esq.
462 Broadway
Providence, RI 02909

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) |
| | ) Cr. No. 04-069T |
| | ) |
| RENATO M. GARCIA, a/k/a | ) |
| Renato Da Costa Ponta-Garca | ) |

**MEMORANDUM IN SUPPORT OF**
**GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT**
**WITH RESPECT TO THE CLAIM OF JENNIFER MITCHELL**

PLEADINGS

On April 19, 2005, a Preliminary Order of Forfeiture was entered forfeiting the interest of the defendant, Renato M. Garcia, in all of the stock, assets, and inventory of the business known as Renskip Motor Sales, Inc., 85 Main Street, Westerly, Rhode Island, including, but not limited to, bank account number 1412-776-8 ($285,278.91) in the name of Renskip Motor Sales located at Citizens Bank, One Citizens Plaza, Providence, Rhode Island ("the Renskip account").

On May 13, 2005, Jennifer Mitchell filed a "claim to the sum of Twenty-Five thousand ($25,000.00) Dollars from the funds seized from Renato Garcia and/or Renskip Motor Sales."

On June 14, 2005, the Court granted the government's motion, pursuant to Fed. R. Crim. P. 32.2 (c)(1)(B), for authorization to conduct discovery regarding the Mitchell

claim. The government deposed Mitchell on June 30, 2005.

## DESCRIPTION OF MOTION

The government seeks summary judgement with respect to the claim of Jennifer Mitchell for the reason that Mitchell will not be able to establish an ownership interest in Renskip Motor Sales, Inc. or any of its assets based upon the undisputed facts.

## STATEMENT OF FACTS

On February 18, 2004, the claimant, Jennifer Mitchell, obtained a cash advance on her MBNA credit card in the amount of $24,800. According to Mitchell, she obtained the cash advance so that she could then loan the money to the defendant, Renato Garcia. (Exhibit A-2). On February, 19, 2004, the funds were direct deposited into her checking account at the Connecticut State Employees Credit Union.[1]

On February 24, 2004, Mitchell obtained a bank check drawn on this account and payable to Jennifer L. Mitchell and Renato Garcia in the amount of $25,000. Mitchell endorsed the back of the check and gave it to the defendant, Renato Garcia. It is unclear whether Garcia simply cashed the check or deposited it directly into a bank account. The back of the check contains endorsements by Mitchell and Garcia and

---

[1]Mitchell was charged a $50.00 fee for this transaction.

indicates that it was processed through both Citizens Bank on February 25, 2004 and Fleet Bank on February 26, 2004. (There is no endorsement directing the deposit to the Renskip account). Mitchell made the payments on the credit card from her own funds. (Exhibit (A-3).

On May 25, 2004, a seizure warrant was executed against the assets of Renskip Motor Sales, Inc., including the Renskip account which contained $285,278.91. An additional $128,800.00 in United States currency was seized on May 25, 2004, from 32 East Haddam Colchester Turnpike, Moodus, Connecticut, where Mitchell (and, on occasion, Garcia) resided.[2]

Subsequent to the seizure of Renskip Motor Sales, Inc. Garcia (through a power of attorney granted to Mitchell) sold property that he owned on Liberty Street in Pawcatuck, Connecticut. Mitchell used the proceeds from the sale to pay the outstanding balance on her MBNA credit card. Thus, Garcia's debt to Mitchell in connection with the $25,000 loan has been fully satisfied. (Exhibit A-4).

---

[2]Mitchell claims that she had no knowledge of the existence of this cash. (Exhibit A-5).

## ISSUE

WHETHER THE UNDISPUTED FACTS ESTABLISH THAT THE CLAIMANT, JENNIFER MITCHELL, DOES NOT HAVE AN OWNERSHIP INTEREST IN RENSKIP MOTOR SALES, INC. AND ITS ASSETS AND THEREFORE, DOES NOT HAVE STANDING TO ASSERT A CLAIM

## POINTS AND AUTHORITIES

Pursuant to 21 U.S.C. § 853(n)(6), a petitioner asserting a claim to property that is the subject of a preliminary order of forfeiture must demonstrate by a preponderance of the evidence that:

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

This provision is essentially a standing requirement. See United States v. Padilla-Galarza, 351 F.3d 594, 600 (1st Cir. 2003).

The petitioner, Jennifer Mitchell, will not be able to establish *any* right, title, or interest to $25,000 from the Renskip account.

First, as a mere unsecured creditor of Renato Garcia, Mitchell has no standing to assert a claim to the funds from the Renskip account. United States v. Ribadeneira, 105 F.3d 833, 836 (2d Cir. 1997); United States v. BCCI Holdings (Luxembourg) S.A., 46 F.3d 1185 (D.C.Cir. 1995), cert. denied, 515 U.S. 1160 (1995). United States v. Perkins, 2005 WL 1595287 (D.Me. July 6, 2005)(A person to whom the defendant owes child support payments is an unsecured creditor without standing to contest the forfeiture of the defendant's property unless she converted her debt to a secured interest in the property). An interest in property, for purposes of the forfeiture statute, must be an interest in a specific asset as opposed to a generalized interest in an entire estate or account. United States v. Ribadeneira, 105 F.3d at 836 (person holding check drawn on defendant's forfeited bank account is a general unsecured creditor with no interest in specific funds). See also United States v. McCorkle, 143 F. Supp. 2d 1311, 1319-20 (M.D. Fla. 2001)("a general creditor has no vested or superior interest in particular assets forfeited unless he not only has secured a judgment against the debtor, but also has perfected a lien against a particular item").

Even if Mitchell had standing to assert a claim to

Renskip corporate assets at one time, the claim no longer exists. According to Mitchell's testimony, she has been paid in full and no debt is owed to her by either Renskip Motors, Inc. or Garcia. In short, she is not even a creditor of either the defendant or his corporation.

## CONCLUSION

For the reasons stated above, the claimant, Jennifer Mitchell, lacks standing to assert a claim as she will not be able to establish an ownership interest in Renskip Motor Sales, Inc. or any of its assets. Therefore, there is no genuine issue as to any material fact and the government is entitled to judgment as a matter of law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

Michael P. Iannotti

MICHAEL P. IANNOTTI
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September 2005, I caused a copy of the foregoing **GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE CLAIM OF JENNIFER MITCHELL** and supporting memorandum of law and Statement of Undisputed Facts to be forwarded, by regular mail, to:

Susan T. Perkins, Esq.
462 Broadway
Providence, RI 02909

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

RECEIVED
JUL 28 2005
U.S. ATTORNEY
DISTRICT OF R.I.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR. NO. 04-069-T |
| | : | |
| RENATO M. GARCIA a/k/a | : | |
| RENATO DA COSTA PONTA-GARCA | : | |

Deposition of **JENNIFER LYNN MITCHELL**, a Witness herein, taken on behalf of the Plaintiff, on THURSDAY, JUNE 30, 2005, 9:45 A.M., at the offices of the United States Attorney, Fleet Center, 50 Kennedy Plaza, Providence, Rhode Island, before Vivian S. Dafoulas, Registered Merit Reporter/Certified Realtime Reporter.

ORIGINAL

Vivian S. Dafoulas, RMR-CRR
50 Fieldstone Drive
East Greenwich, RI 02818-2064
(401) 885-0992

Exhibit A-1

A. I think it's just a regular process they do.
Q. Was that a fee for transferring money from -- from the credit card account to a checking account or another account of yours?
A. Honestly I don't know if they do the fee for transferring it to an account or if it's just a charge with a maximum cash advance fee. I don't know.
Q. How much was the charge?
A. $50.
Q. Were you aware that there was going to be a charge before you borrowed the money?
A. Yeah.
Q. What was -- for what reason did you borrow this money on your credit card?
A. It was a zero percent APR offer for a year and Renato wanted a loan.
Q. Now, does it say zero percent on this credit card?
A. No, not on here. I don't know. Does it? Yeah. Cash advances, balance transfers, zero percent.
Q. Now, you say Renato wanted the loan. What do you mean by that?

A. He -- well, because it was a zero percent APR, it was a good -- you know, you got a year to pay it back so it was a good -- a good way to get a loan.

Q. Did monthly payments have to be made on this?

A. Yes.

Q. But no interest accrued?

A. Correct.

Q. And no interest accrued for the entire year?

A. Yeah.

Q. Did you make other payments on this credit card?

A. Yes.

Q. Did you obtain the money from Renato to make the payments or did you make them from your own funds?

A. I made them from my own funds.

Q. What's the present balance on this credit card?

A. This card is paid off now.

Q. Where did you get the money to pay off the credit card?

A. From property that was sold.

Q. What property was that?
A. Pawcatuck, Connecticut, Liberty Street.
Q. Whose property was that?
A. Renato's.
Q. So you loaned Renato the money?
A. Correct.
Q. Renato's paid you back?
A. Well --
Q. He's paid you back? He sold his property, gave you the money back?
A. Well, technically it's -- it's paid, yes.
Q. So the loan has been paid?
A. It's been paid, yes.
Q. In full?
A. In full, correct.
Q. So you have no claim to the money? You have no claim against any money? You have no claim on Renato Garcia's money, do you?
A. Well, the money was deposited in Renskip's account.
Q. But you've been paid the money back?
A. Yes. I was power of attorney, so yes, I had access to the money and I paid off the card.
Q. Do you have any kind of promissory note or other documentation or writing --

A. Renato? No.
Q. When was the last time you had been in the bedroom prior to its being searched?
A. It would have been that morning.
Q. Was any cash kept in the house at that time?
A. Come to find out, yes, but...
Q.. Well, when you left the house that morning, did you know that there was cash --
A. No, I didn't.
Q. -- being kept in the house?
A. No.
Q. Did you know that there was cash behind the drawer in the dresser --
A. No, I did not.
Q.. -- in your bedroom?
A. No.
Q. Did you come to find out how that cash got there?
A. They showed it to me after they -- they took it.
Q. Do you know how much cash was there?
A. The paper said 128,000 I think.
Q. Do you know where that cash came from?
A. No, I have no idea.