IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
vs. )
) Cr. No. 04-069T
)
RENATO M. GARCIA, a/k/a )
Renato Da Costa Ponta-Garca )

**STATEMENT OF UNDISPUTED FACTS**
**IN SUPPORT OF**
**GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT**
**WITH RESPECT TO THE CLAIM OF RICHARD VENDOLA**

Pursuant to Local Rule 12.1, the government submits the following facts as being not in dispute in support of its motion for summary judgment with respect to the claim of Richard Vendola:

1. On October 28, 2002, Renato Garcia's attorney, Louis Cappuccio, Jr., entered into a sales agreement with Garcia to purchase a 2001 Hummer from Renskip Motor Sales, Inc. for $87,000 with a $27,000 down payment and the $60,000 balance financed through the Westerly Credit Union.[1]

2. In November 2003, Cappuccio sold the Hummer to Renskip

---

[1] The Certificate of Title for the Hummer indicates that Cappuccio actually purchased the Hummer as a new vehicle on January 11, 2002 and that the vehicle had an odometer reading of 381 miles. At his August 16, 2005 deposition, Cappuccio testified that he purchased the 2001 Hummer from Jack's Chevrolet in Colchester, Ct. in January 2002 using a trade-in worth $27,000 and paying $60,000 in check drawn on his account at Washington Trust Company.

in exchange for Renskip paying off the $44,577.35 balance of the Westerly Credit Union loan.

3. The original certificate of title in Cappuccio's name indicated that there was no lienholder.

4. The title was transferred to Renato Garcia with Cappuccio's undated signature.

5. The odometer disclosure statement indicated the mileage as being 21,101.

6. Records of the Westerly Credit Union indicated that Cappuccio's loan was paid in full on November 21, 2003.

7. A Renskip purchase order dated November 14, 2003, indicated that the claimant, Richard Vendola, purchased the 2001 Hummer from Renskip for $56,000 with a $20,000 cash down payment and a $36,050 "auto dealer loan" from Charter Oak Federal Credit Union.

8. The purchase order indicated that the mileage on the odometer was 3,908.[2]

9. Although Vendola insured the vehicle and obtained the above-referenced loan, the vehicle was never registered to him

---

[2]At his June 30, 2005 deposition, Vendola indicated that although the mileage stated was 3,908, this was a mistake as he knew there was actually 33,000 miles on the Hummer when he purchased it. Vendola also admitted that he was aware that Garcia had turned back odometers on vehicles that he later sold. Vendola also admitted that he was aware that Garcia was selling marijuana and cocaine.

and the title was never transferred to his name.

10. On March 2, 2004, Vendola was contacted by Jean Marc Agostini (who was acting on behalf of Francois Morabito from France) who had seen the Hummer listed for sale on the Renskip Website.

11. On March 5, 2004, Morabito caused $2,500 to be wire-transferred to the Renskip account as a down-payment on the Hummer.

12. On March 6, 2004, Garcia sold a Ford Expedition to a Drug Enforcement Administration confidential source ("CS")for $15,000 which was represented to be the proceeds of drug trafficking. Vendola completed the paperwork for the transaction, representing the sale price to be $9,500 and Vendola wrote "refuses to give" with respect to the Social Security number. This transaction was one of three transactions for which the defendant, Renato Garcia, was convicted on April 1, 2005.

13. On March 9, 2004, Morabito caused $51,967, the remainder of the purchase price for the Hummer, to be wire-transferred into the Renskip Account.

14. On March 18, 2004, Renato Garcia as "seller," executed a Renskip purchase agreement to sell the Hummer to Morabito for $54,500. The purchase agreement indicated the

lienholder's name as being "none" and the license or title number as being "[6]813600-CT."

15. The mileage shown on the purchase agreement was 31,011.

16. The name "Rick Vendola" was noted as "salesperson."

17. In late April 2004, the Hummer was shipped to France.

18. On May 25, 2004, a search and seizure warrant was executed at Renskip. As part of the execution of the seizure warrant, $285,278 was seized from the Renskip Account.

19. Between March 9, 2004, when the $51,967 was deposited and May 25, 2004, when Renskip was seized, $1,460,715 in checks were drawn on the Renskip Account; $1,516,550 in additional deposits were made to the Renskip account; $50,800 was wire-transferred out of the Renskip account; and $103,985 in additional funds were wire-transferred into the Renskip account.

20. The average daily balance in the Renskip account during this period was $175,954.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

MICHAEL P. IANNOTTI
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of October 2005, I caused a copy of the foregoing **GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE CLAIM OF RICHARD VENDOLA** and supporting memorandum of law and Statement of Undisputed Facts to be forwarded, by regular mail, to:

Richard Vendola
614 Laurel Hill Road
Norwich, CT 06360

Nancy A. DeQuinzio